IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| LAMARR D. WILLIAMS, #370-175, | * |
| Plaintiff, | *        Case No.: GJH-16-1041 |
| | * |
| v. | * |
| KATHLEEN GREEN, WARDEN, | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Lamarr D. Williams, a Maryland Division of Correction ("DOC") prisoner housed at Maryland Correctional Institution-Jessup ("MCI-J"), filed a self-represented civil rights complaint under 42 U.S.C. § 1983, seeking money damages against Kathleen Green, the former warden of Eastern Correctional Institution ("ECI"). Williams alleges that while he was confined at ECI, Green was deliberately indifferent to his safety, resulting in an August 21, 2015 attack during which he was stabbed in the neck. ECF No. 1 at 3.[1] Presently pending is Defendant Green's unopposed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 21.[2] No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Defendant's Motion, construed as a Motion for Summary Judgment, shall be granted.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on December 13, 2016, Williams was notified in writing that Green had filed a dispositive motion; that Williams had seventeen days in which to file written opposition to the motion; and that if Williams failed to respond, summary judgment could be entered against him without further notice. ECF No. 22. No response has been received by the Court.

I.    **BACKGROUND**

A.    **Plaintiff's Allegations**

Williams states that during May 2015 he was placed on administrative segregation "due to numerous threats made on [his] life." ECF No. 1 at 3. On August 20, 2015, he alleges that he was placed in a housing unit with known enemies. *Id.* He claims that due to his Security Threat Group ("STG") status, he should not have been placed in that housing unit. *Id.*

Williams states that on the following morning, August 21, 2015, he was allegedly ambushed by unnamed assailants and stabbed in the neck while on the way back from the "chow hall." ECF No. 1 at 3; ECF No. 21-2 at 17. Williams claims to have been emotionally traumatized by the incident. ECF No. 1 at 3-4.

In the Complaint, Williams acknowledges that he failed to exhaust his administrative remedies. *Id.* at 2. He states that he wrote a statement and signed an incident report, and "was told that would be enough for an investigation." *Id.*

B.    **Defendant's Response**

The parties agree that Williams has repeatedly expressed concern for his safety, both before the incident alleged in this matter, *see* ECF Nos. 21-2 at 11, and since that date. *See e.g. id.* at 19-20, 21, 22-23, 26-27, 53. As a result, Williams was moved between various housing units at ECI, and on occasion placed in administrative segregation and protective custody. *See e.g. id.* at 11-12.

Although Williams had previously claimed that he was at risk because he had attempted to disassociate from his STG and feared retribution, *id.* 11-12, prison records do not show that Williams ever reported known enemies to prison authorities. *Id.* at 7. Moreover, on August 11,

2015, Williams advised the correctional staff that he could safely be housed in Housing Unit 6, *id.* at 13, which he was assigned to on August 20, 2015. *Id.* at 4.

The day after his assignment to Housing Unit 6, Williams reported that he had been assaulted and had been told that "if [he] didn't leave it will be worse next time." *Id.* at 17. Medical treatment was provided that afternoon by Charlotte Townley, RN, who noted a break in his skin on the back of his neck and a scabbed area. *Id.* at 16. No other injuries were noted and RN Townley reported that Williams denied being in pain. *Id.* Williams' medical records reflect no medical attention on or after August 21, 2015 as a result of the alleged incident. ECF No. 21-3.[3]

In response to Williams' allegations of an assault, an Administrative Segregation Investigation Report was issued that same day. *Id.* at 15. The investigator wrote that Williams had "a mark on the back of his head" and that Williams had informed him that he was "STG '[Gangster's Disciples]' but dropped his flag and has been moving around ever since." *Id.* The investigator recommended that Williams be transferred from ECI because he had already been placed in several units in the facility. *Id.*

On August 21, 2015, the same day as the attack, Williams was moved out of the housing block where the incident occurred and into Administrative Segregation within ECI. *Id.* Williams was eventually transferred from ECI to Roxbury Correctional Institution (RCI) in April 2016. *Id.* at 3.

Green argues that Williams' allegations are insufficient to state a claim based on supervisory liability, and there is no 42 U.S.C. § 1983 liability under the doctrine of *respondeat*

---

[3] In a statement attached to his Complaint, Williams stated that an order for mental health evaluation had been submitted by case management after this incident due to the "mental issues" he had from the incident. ECF No. 1-1. The Court did not find evidence of Williams receiving mental health treatment but notes that several of the photocopied pages were hard to read.

*superior.* ECF No. 21-1 at 7-11. She also argues that Williams did not exhaust his administrative remedies regarding the incident, submitting in support of this argument the declaration of Susan Shumaker, Litigation Coordinator at ECI, who stated that a review of ECI's Administrative Remedy Procedure ("ARP") index for August and September confirms that Williams failed to file an ARP. ECF No. 21-2 at 1; *see also* ECF No. 21-2 at 28-50. Green also asserts the defenses of sovereign and qualified immunity. *Id.* at 12-15.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks

omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

Defendant's motion is styled as a Motion to Dismiss, or in the Alternative, for Summary Judgment. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

However, summary judgment should not be granted if the nonmoving party has not had the opportunity to discover information that is essential to his opposition to the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5, (1987). If the nonmoving party feels that the motion is premature, that party can invoke Fed. R. Civ. Pro. 56(d). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986). Under Rule 56(d), the Court may deny a motion for summary

judgment if the non-movant shows through an affidavit that, for specified reasons, he or she

cannot properly present facts, currently unavailable to him or her, that are essential to justify an

opposition. Fed. R. Civ. Pro. 56(d). "'[T]he failure to file an affidavit . . . is itself sufficient

grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd. v.*

*Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (citations omitted). But a failure

to file an affidavit may be excused "if the nonmoving party has adequately informed the district

court that the motion is premature and that more discovery is necessary" and the "nonmoving

party's objections before the district court served as the functional equivalent of an affidavit." *Id.*

at 244-45 (citations and internal quotation marks omitted).

Here, Plaintiff has not filed an affidavit under Rule 56(d) or made an equivalent showing

of the need for more discovery. Thus, the Court will convert Defendant's Motion to Dismiss into

a Motion for Summary Judgment.

Summary judgment is appropriate if "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . . ,

admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is

"no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 322. The party moving for

summary judgment bears the burden of demonstrating that no genuine dispute exists as to

material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the

moving party demonstrates that there is no evidence to support the nonmoving party's case, the

burden shifts to the nonmoving party to identify specific facts showing that there is a genuine

issue for trial. *See Celotex*, 477 U.S. at 322-23. A material fact is one that "might affect the

outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179,

183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A

dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party

exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However,

the nonmoving party "cannot create a genuine issue of material fact through mere speculation or

the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

III.   **DISCUSSION**

   A.   **Failure to Exhaust Administrative Remedies**

   Defendant argues that Plaintiff's claim should be dismissed because he failed to exhaust

his administrative remedies. Prisoners are required to exhaust "such administrative remedies as

are available" before filing an action. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 136 S.Ct. 1850,

1858 (2016) ("An inmate ... must exhaust available remedies, but need not exhaust unavailable

ones."). "[A]n administrative remedy is not considered to have been available if a prisoner,

through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517

F.3d 717, 725 (4th Cir. 2008). "Conversely, a prisoner does not exhaust all available remedies

simply by failing to follow the required steps so that remedies that once were available to him no

longer are." *Id.* (citation omitted).

   Exhaustion is a mandatory requirement. *Ross*, 136 S. Ct. 1850, 1857 (2016); *Jones v.

Bock*, 549 U.S. 199, 219 (2007). A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at

1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000)). The purpose of exhaustion is to: (1)

"allow [ ] a prison to address complaints about the program it administers before being subjected

to suit"; (2) "reduce[ ] litigation to the extent complaints are satisfactorily resolved"; and (3)

prepare a "useful record" in the event of litigation. *Jones*, 549 U.S. at 219. A prisoner's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he had remedies available to him of which he failed to take advantage. *Jones*, 549 U.S. at 211–12, 216; *Moore*, 517 F.3d at 725.

In *Ross*, the Supreme Court identified three circumstances in which an administrative remedy is unavailable. 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the Administrative Remedy Procedure ("ARP") process. *See* Md. Code Regs. 12.07.01.04(A). The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. Md. Code Regs. 12.07.01.05(A). If the ARP request is dismissed or denied, the inmate must file an appeal with the Commissioner of Correction. *See* Md. Code Regs. 12.07.01.05(B). If that appeal is denied or the Commissioner fails to respond to the grievance, the inmate must file a subsequent appeal with the Inmate Grievance Office. *See* Md. Corr. Servs., Code § 10-206; Md. Code Regs. 12.07.01.04(B). Only

8

after exhausting these administrative channels is the inmate empowered to seek judicial review of his claims in a court of law. *See* Md. Corr. Servs. § 10-210; 42. U.S.C. § 1997e(a).

Defendant documents that Williams did not attempt to complete any portion of the administrative exhaustion process. In his Complaint, Williams acknowledges that he did not exhaust his administrative requirements, but argues that he "wrote a statement and signed an incident report...and was told that would be enough for an investigation." ECF No. 1 at 2.

As the Supreme Court said in *Ross,* an administrative remedy is not available when "prison administrators thwart inmates from taking advantage of a grievance process through machination, *misrepresentation*, or intimidation." *Id.* at 1860 (emphasis added). Here, the record shows that an investigation into the assault was initiated after Williams' submitted a statement. ECF No. 21-2 at 15. Williams has not opposed defendant's motion and has not provided any more information regarding this comment. Thus, the Court finds that Williams has not shown that this statement, by an unnamed individual, was a misrepresentation. While Williams may have misinterpreted this individual's statement, there is no indication that he was "thwart[ed] from taking advantage of a grievance process." *Id.* at 1860. Thus, the Court finds that Plaintiff did not exhaust his administrative remedy as to this claim and it is subject to dismissal on that ground alone.

### B. Failure to State a Claim

However, even if Williams were to have exhausted his administrative remedies, the Court would still find that it was subject to dismissal for failure to state a claim upon which relief may be granted. Williams names Green as the sole defendant, based on her supervisory status as Warden at ECI, and alleges that his placement in Housing Unit 6 was made with deliberate indifference to his safety.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on a prison official to take "reasonable measures to guarantee the safety of the inmates." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).[4] For liability to apply, an inmate must establish "a serious deprivation of his rights in the form of a serious or significant physical or emotional injury, or a substantial risk thereof" and demonstrate that "the prison official had a sufficiently culpable state of mind, which in this context, consists of a deliberate indifference to health or safety." *Id.* (internal quotations and citations omitted).

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply to impose liability on supervisors such as Defendant Green pursuant to 42 U.S.C. § 1983. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004). Instead, supervisory liability under § 1983 must be supported with evidence that:

> (1) [] the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) []the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) [] there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted). Here, Williams has failed to establish either that he suffered a serious deprivation of his rights or that Defendant Green had a sufficiently culpable state of mind. The record demonstrates that on August 11, 2015, Williams advised the correctional staff that he could safely be housed in Housing Unit 6. He was assigned to that unit on August 20, 2015. The next day, he was allegedly assaulted and threatened. Correctional staff investigated the incident, provided medical assistance and

---

[4] The Eighth Amendment's ban against cruel and unusual punishment applies to the states via the Fourteenth Amendment. *See Shakka v. Smith*, 71 F.3d 162, 165 n. 2 (4th Cir. 1995).

removed him from the unit that same day, eventually transferring him to a different correctional facility. From the record before it, the Court finds that these steps comply with prison officials' duty to take "reasonable measures to guarantee the safety of the inmates." *Raynor*, 817 F.3d at 127. Even more fatal to his claim, Williams does not allege that Green was in any manner personally involved in the decision to move him to various housing units, nor does he satisfy the elements for conferring supervisory liability. This, his Complaint does not state a cognizable claim for which Green could be held liable.

### C. Immunity

The doctrine of sovereign immunity provides yet another reason to dismiss Plaintiff's Complaint. Although not delineated in the Complaint, the Court assumes that Williams is suing Green in her official and individual capacities. Green contends she is protected from suit in her official capacity under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. Judgment against a public employee "in his official capacity" imposes liability on the public entity. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) (citing *Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658, 690 n. 55 (1978)). It follows that Williams' suit against Defendant Green for actions undertaken in her official capacity as Warden is an action against the State of Maryland. Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State Sch. and Hasp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of

11

cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. *See Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 397 (4th Cir. 1990) ("[t]he waiver of sovereign immunity in the Maryland Torts Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts."). Thus, William's Complaint against Defendant Green in her official capacity is barred by the Eleventh Amendment.[5]

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 21, shall be granted. A separate Order follows.

Dated: July 25, 2017

GEORGE J. HAZEL
United States District Judge

---

[5] Having found that Plaintiff's constitutional rights were not violated, the Court need not reach the issue of qualified immunity.